UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANDREW R. WISE,
as attorney-in-fact for his parents,
Ruth Wise and Louis Wise,

    Plaintiff,

v.                                     Case No. 8:19-cv-00455-T-02JSS

UNITED HEALTHCARE OF FLORIDA,
INC.,

    Defendant.
_____/

## **ORDER**

This action concerns a contractual dispute over insurance coverage. The matter comes to the Court on Plaintiff's motion to remand the case to Florida state court. Dkt. 5. Defendant has filed an opposition to the motion. Dkt. 12. The Court **GRANTS** the motion.

### BACKGROUND

According to the Complaint filed in the Circuit Court of the Thirteenth Judicial Circuit in and for Hillsborough County, Florida, Plaintiff's parents have an insurance policy through Defendant as a supplement to their Medicare plans. Dkt. 1-2 at 6. The Evidence of Coverage, which includes the terms of the policy,

provides for services related to home health agency care. *Id.* at 6-7. As long as relevant conditions are met, an insured must pay a $0 copayment for in-network services and 50% coinsurance for out-of-network services. *Id.* at 7. That out-of-network service provider must be "eligible to participate in Medicare." *Id.* at 8. This is in contrast to other provisions in the Evidence of Coverage that require providers to be "certified" by Medicare. *Id.*

Though Plaintiff's parents satisfy the conditions for coverage, Defendant has not identified in-network home health agencies that could provide listed services. *Id.* at 9-10. Plaintiff's parents eventually received services through DS In Home Services, Inc. as an out-of-network provider that is "eligible to participate in Medicare." *Id.* at 10. Plaintiff submitted to Defendant medical reimbursement request forms for the cost of services. *Id.*

Defendant denied payment because the services were a "Medicare non covered service" and "[t]he provider is not listed as a certified CMS provider." *Id.* at 10-11. After extensive communication between the parties, Defendant informed Plaintiff there were no in-network or out-of-network providers that were "eligible to participate in Medicare" that could provide services. *Id.* at 11. Though Defendant has partially reimbursed some of the services Plaintiff's parents received, Defendant has "failed and refused to provide the Insureds with complete,

consistent, and continuous coverage and/or reimbursement for the Home Health Aide Services." *Id.* at 12.

Plaintiff seeks a declaratory judgment declaring Defendant's obligations under his parents' insurance policy, namely relating to the distinction between "eligible" or "certified" service providers and Defendant's failure to identify available providers of home health care services. *Id.* at 13-14. Defendant removed the case to the United States District Court for the Middle District of Florida on February 21, 2019, arguing jurisdiction lies under 28 U.S.C. § 1442(a)(1) and § 1331. Dkt. 1.

## DISCUSSION

The Court has neither federal officer removal jurisdiction nor federal question jurisdiction. Remand is therefore appropriate.

I.  <u>Federal Officer Removal Jurisdiction</u>

Section 1442(a)(1) allows for removal of civil actions against:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). Though the phrasing varies by case, a private party seeking to remove under the federal officer removal statute must: (i) be a "person";

3

(ii) be "acting under" a federal officer or agency; (iii) be sued for or relating to actions "under color of such office"; and (iv) have a colorable federal defense. *See Brokaw v. Nat'l Air Cargo Holdings, Inc.*, No. 6:15CV1658-O-37KRS, 2015 WL 8265590, at *2 (M.D. Fla. Dec. 9, 2015) (citation omitted); *see also Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017) (finding that a plaintiff must show "a causal connection between what the officer has done under asserted official authority and the action against him").[1] Defendant argues that, by providing coverage through a Medicare Advantage plan ("MA plan"), it is "acting under" the direction of the U.S. Department of Health and Human Services Centers for Medicare & Medicaid Services ("CMS"). The Court disagrees.

As an initial matter, the Medicare Act creates a federally subsidized health insurance program administered through CMS. *See Barrows v. Burwell*, 777 F.3d 106, 108 (2d Cir. 2015). Medicare Parts A and B provide for inpatient and outpatient services, respectively. *Id*. Part C allows for beneficiaries to opt out of coverage under A and B and into MA plans offered by private companies called Medicare Advantage Organizations ("MAOs"). *Premier Inpatient Partners LLC v. Aetna Health & Life Ins. Co.*, 362 F. Supp. 3d 1217, 1219 (M.D. Fla. 2019) (citations omitted). MAOs contract with patients for rates and costs of medical

---

[1] It is undisputed that, as a corporation, Defendant is a person for purposes of federal officer jurisdiction. *See Brokaw*, 2015 WL 8265590, at *2.

services, while CMS pays the MAO a fixed fee per enrollee. *Id.* (citation omitted); *see also Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1235 (11th Cir. 2016) (explaining in detail Medicare Part C).

To be sure, MA plans are regulated and, to some extent, monitored by CMS. *Mann v. Reeder*, No. 1:10-CV-00133-JHM, 2010 WL 5341934, at *3 (W.D. Ky. Dec. 21, 2010); *see also* 42 C.F.R. § 422.504 (identifying required terms of the contract between CMS and MAO); Dkt. 12-1 (Defendant's contract with CMS). But, as the U.S. Supreme Court has held, federal jurisdiction does not necessarily lie where there is mere compliance with the law, or even where "a federal regulatory agency directs, supervises, and monitors a company's activities in considerable detail." *Watson v. Philip Morris Cos.*, 551 U.S. 142, 145 (2007). Indeed, though § 1442(a)(1)'s "acting under" language is "broad, and . . . the statute must be liberally construed," the "broad language is not limitless." *Id.* at 147 (internal quotation marks and citations omitted).

Rather, a private person must demonstrate its "effort to assist, or to help carry out, the duties or tasks of the federal superior." *Id.* at 152 (emphasis omitted). A clear example of this is *Caver*, where an electric cooperative that was funded in part by federal loans was subject to a "significant level of control" over its functions and operations as "instrumentalities of the United States." 845 F.3d at 1143.

Courts in the Middle District have found that CMS does not exercise the same level of control over MAOs. *See, e.g.*, *Premier Inpatient Partners*, 362 F. Supp. 3d 1217; *Kindred Hosps. E., LLC, v. Wellcare of Fla.*, No. 8:17-cv-00864-EAK-AEP (M.D. Fla. Feb. 2, 2018) (Dkt. 43); *see also Shalaby v. Heritage Physician Network*, No. CV H-18-1496, 2019 WL 1119562, at *2 (S.D. Tex. Mar. 11, 2019) (citing *Premier Inpatient Partners* in finding removal improper). In reaching their decisions, both *Premier Inpatient Partners* and *Kindred Hospitals* looked to the only appellate guidance on the application of federal officer jurisdiction in the MAO context, *Ohio State Chiropractic Ass'n v. Humana Health Plan Inc.*, 647 F. App'x 619 (6th Cir. 2016).

At the outset of that case, the Sixth Circuit found it useful to compare MAOs to contracted private health insurers under the fee-for-service arrangement of Medicare Part B. 647 F. App'x at 623. Unlike MAOs, those insurers have been expressly delegated legal authority and "act on behalf of CMS" as "agents" of the Secretary of the Department of Health and Human Services. *Id.* (citations omitted). CMS further indemnifies the insurers with respect to their duties. *Id.* (citations omitted).

As for Part C, although MAOs must provide the same benefits as Parts A or B, MAOs can "design MA plans as they see fit." *Id.* This includes their network of providers, benefits beyond traditional Medicare, out-of-pocket costs to enrollees,

6

and covered care from out-of-network providers. *Id.* Additionally, MAOs need not regularly update CMS on enrollees' claims and benefits and must attempt to resolve any benefits disputes before enrollees seek administrative review. *Id.* Thus, the Sixth Circuit concluded, "MAOs have an arms-length relationship with CMS." *Id.*

The Sixth Circuit also acknowledged that a "contractor may be more likely to act under a federal officer if it takes on a job that the government would otherwise have to do." *Id.* To this point, the court answered:

> [i]f no health insurer chose to contract with CMS as an MAO, it is doubtful that the government would get into the business of offering its own MA plans. It certainly doesn't *have* to. More likely, it would fall back on traditional fee-for-service Medicare—which it must provide regardless.

*Id.* at 623-24. (emphasis in original).

Lastly, the appellate court noted that the expansion of § 1442(a)(1)'s "for or relating to any act under color of office" language "should not be read so broadly that it renders the 'acting under' requirement superfluous.'" *Id.* at 624-25. Here, there is nothing so unique about the nature of Plaintiff's claims to circumvent § 1442(a)(1)'s "acting under" requirement and compel federal officer removal jurisdiction.

The Court ultimately finds the above analysis more persuasive than cases that have found federal officer jurisdiction in the MAO context. *E.g., Assoc.*

7

*Rehab. Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d 1388 (S.D. Fla. 2014). Defendant's reliance on *Anesthesiology Assocs. of Tallahassee, Fla., P.A. v. Blue Cross Blue Shield of Fla., Inc.*, No. 03-15664, 2005 WL 6717869 (11th Cir. Mar. 18, 2005) is equally unavailing. That case dealt with the unique situation of an insurer contracting with a government agency under a federal health benefits program. *Id.* at *2. The Sixth Circuit in *Ohio State Chiropractic Ass'n*, in fact, acknowledged and distinguished a different federal health benefits case on the grounds that the contractor was "performing tasks that the government would otherwise have to use its own agents to complete." 647 F. App'x at 624 (citing *Jacks v. Meridian Res. Co.,* 701 F.3d 1224, 1233 (8th Cir. 2012); other citations omitted).

Because Defendant was not "acting under" CMS, removal under § 1442(a)(1) is inappropriate. The Court now turns to Defendant's second basis for federal jurisdiction.

II. <u>Federal Question Jurisdiction</u>

Defendant also argues that, "because the action turns on a substantial question regarding the construction of the Medicare Act," the Court has federal question jurisdiction over the case. Dkt. 1 at 10-12. District courts possess "original jurisdiction of all civil actions arising under" federal law. 28 U.S.C. § 1331. Though Plaintiff pleads only state law claims, "federal jurisdiction over a

state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)); *see also Brinson v. Providence Cmty. Corr.*, 703 F. App'x 874, 877 (11th Cir. 2017) (applying *Gunn/Grable*).

In its Notice of Removal, Defendant invoked a different test from *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285 (11th Cir. 2004): "Even when a plaintiff has pled only state-law causes of action, he may not avoid federal jurisdiction if either (1) his state-law claims raise substantial questions of federal law or (2) federal law completely preempts his state-law claims." 381 F.3d at 1290. In *Dunlap*, the Eleventh Circuit found that for the state law claims to raise substantial questions of federal law:

> federal law must be an essential element of [the claim], and the federal right or immunity that forms the basis of the claim must be such that the claim will be supported if the federal law is given one construction or effect and defeated if it is given another. The mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction. In other words, the state-law claim must really and substantially involve a dispute or controversy respecting the validity, construction or effect of federal law.

*Id.* (citations, internal quotation marks, and modifications omitted). The second exception exists "when a federal statute both preempts state substantive law and

9

provides the exclusive cause of action for the claim asserted." *Dial v. Healthspring of Ala., Inc.*, 541 F.3d 1044, 1047 (11th Cir 2008).

Seemingly in response, Plaintiff cited *Dial*. Dkt. 13. Because the case postdates *Grable*, it is worth explanation: The defendant in *Dial* sought removal, arguing both preemption and substantial federal question to the district court. *Dial v. Healthspring of Ala., Inc.*, 501 F. Supp. 2d 1348, 1350 (S.D. Ala. 2007). Focusing only on preemption, the district court found removal proper. *Id.* at 1359. The appellate court reversed, noting that "the only source of federal law that [the defendant] invokes in support of removal is the Medicare Act, which 'strips federal courts of primary federal-question subject matter jurisdiction' over claims that arise under that Act." *Dial*, 541 F.3d at 1047. Though the Eleventh Circuit in *Dial* was not explicit on the matter, the court in *Premier Inpatient Partners* seemed to find that such a holding also precluded jurisdiction on the basis of a substantial question of federal law. *Premier Inpatient Partners*, 362 F. Supp. 3d at 1221-23 (applying *Dial* in finding no jurisdiction where defendant argued preemption and substantial question).

In any event, this action seeks declaratory relief to interpret terms of, and identify obligations under, a contract between two private parties. Defendant emphasizes that the Evidence of Coverage is a boilerplate document based off a template provided by CMS. Dkt. 12 at 5. Be that as it may, such "model marketing

materials" hardly constitute federal law. Furthermore, Defendant set forth no authority that CMS *requires* MAOs to use the template's language. The regulation cited, 42 C.F.R. § 422.111, merely outlines what coverage information must be disclosed to enrollees.

More importantly and as discussed above, it is the MAOs that decide their network of providers, what benefits to provide enrollees beyond traditional Medicare, and the care enrollees can obtain from out-of-network providers. *See Ohio State Chiropractic Ass'n*, 647 F. App'x at 623. The dispute ultimately concerns Defendant's interpretation of its own contract and coverage decisions that it made.

Defendant provides no caselaw to support its proposition that such a dispute involves a substantial federal question. *New York City Health & Hosps. Corp. v. WellCare of New York, Inc.*, 769 F. Supp. 2d 250 (S.D.N.Y. 2011), in contrast to the facts here, involved a health care provider as a third-party beneficiary seeking to enforce a contract between CMS and an MAO. The contract required the MAO "to pay health care providers according to the terms and conditions required by Medicare law and regulations." 769 F. Supp. 2d at 256. The complaint further alleged that "Medicare law and regulations require that [the MAO] pay [the provider] the amount that [the provider] could collect for its services had [the MAO's] enrollees been enrolled in Original Medicare," and that the MAO

"breached its contract with CMS by failing to pay [the provider] the . . . amounts for the services [it] provided to [the MAO's] Medicare enrollees." *Id.* The court therefore determined that "in order to prevail on its breach of contract claim, [the provider] will have to prove that [the MAO's] failure to pay the . . . amount violated Medicare law and regulations." *Id.*; *see also Ohio State Chiropractic Ass'n*, 647 F. App'x at 621, n.1 (finding no substantial federal issue in case involving Medicare Part C reimbursements).

Put simply, the facts here present no such claim and ultimately do not fit within the "special and small category" delineated by *Gunn* and *Grable*. *Brinson*, 703 F. App'x at 877 (citation omitted). In the absence of both federal officer removal jurisdiction and federal question jurisdiction, remand is appropriate.

## CONCLUSION

The Court **GRANTS** Plaintiff's motion. Dkt. 5. The matter is remanded to the Circuit Court in and for Hillsborough County, Florida. The clerk is directed to terminate any pending motions and close the file.

**DONE AND ORDERED** at Tampa, Florida, on May 1, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
All counsel of record